UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

MARK PROVENZANO, Case No. 12-41474-MBM
Chapter 7
Debtor. Hon. Marci B. McIvor
_______________________________/

EMPLOYEES ONLY, INC.,
HUMAN RESOURCES STRUCTURE, INC.,
and MOTOR CITY HUMAN RESOURCES, INC.,

Plaintiff,

v. Adv. No. 12-5055

MARK PROVENZANO,

Defendant.
__________________________________/

**OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNDER § 523(A)(14) AND § 523(a)(14A) AND GRANTING SUMMARY JUDGMENT TO DEFENDANT**

Plaintiffs filed a Motion for Summary Judgment alleging that Defendant's debt to Plaintiffs is non-dischargeable under 11 U.S.C. § 523(a)(14) and § 523(a)(14A). For the reasons set forth in this Opinion, Plaintiffs' Motion is DENIED and this Court GRANTS summary judgment to Defendant.[1]

[1]The Court may enter summary judgment in the absence of a cross-motion, if otherwise appropriate. *Century Offshore Mgmt. Corp. v. BMO Financial Incorporated*, 119 F.3d 409, 412 (6th Cir. 1997); *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Ledford v. Tiedge*, 106 B.R. 485 (Bankr. S.D. Ohio 1989); *Dickeson v. Quarberg*, 844 F.2d 1435, 1444 n.8 (10th Cir. 1988).

## I.

## FACTUAL BACKGROUND

Plaintiff, Employees Only, Inc., is a Michigan corporation that handles paperwork and administrative duties for employers. It is operated by its owner, Mario Apruzzese, and its President, Janine Gradowski.

Plaintiffs, Human Resources Structure, Inc., and Motor City Human Resources, Inc., are owned by or affiliated with Employees Only, Inc. Employees Only, Inc. assigned portions of their contracts to the other Plaintiffs, to manage risk and cost savings.

CCS, LLC, ("CCS") is a Florida Company, conducting construction business in Michigan. It is solely owned by Defendant, Mark Provenzano, who personally manages CCS. (See Provenzano, Deposition Transcript, July 27, 2009, p. 50, 117-118).

On December 18, 2006, Employees Only ("EO") and CCS entered into a written contract entitled, "Client Services Agreement", in which Employees Only, or its assigns, agreed to handle CCS's payroll and benefit administration under a co-employer relationship, and CCS agreed to pay Employees Only in accordance with the established fee schedule. (Plaintiffs' Exhibit A, Client Services Agreement). Mark Provenzano signed the CCS-EO contract as an authorized representative of CCS on behalf of CCS. (Plaintiffs' Exhibit A, Client Services Agreement, ¶¶ 1, 2a, 3J.) Mark Provenzano, individually, was not a party to the CCS-EO Client Services Agreement.

Under the Client Services Agreement, Plaintiffs processed CCS's payroll. Plaintiffs computed wages and deductions for each CCS employee and would issue

each employee a check for his net pay on the regularly scheduled payday. Plaintiffs would also deduct the appropriate amounts from each employee's check to cover the employee's tax obligations, 401(k) contributions and their share of benefits. Plaintiffs would then issue checks to pay for CCS's employment tax liability, to make the employees' 401(k) deposits, and to process workers compensation insurance and health insurance premiums. These distributions were made through Plaintiffs' bank account.

Pursuant to the Client Services Agreement between Plaintiffs and CCS, before any disbursements were made by Plaintiffs, CCS was to pre-pay Plaintiffs the gross amount of the disbursement, plus Plaintiffs' regular fee for performing its services. The pre-payment was to be in the form of a wire transfer, or ACH transfer, of funds from CCS's bank account to Plaintiffs' bank account, at least 48 hours prior to any disbursement by Plaintiffs. (Plaintiffs' Exhibit A, Client Services Agreement, p. 7, ¶ A, "Payment").

During the fiscal year ending December 31, 2007, CCS paid Plaintiff EO $1,230,696.08, with this figure including $41,443.54 in finance charges and $23,016.72 in late fees. (Defendant's Exhibit D). Similarly, for the fiscal year ending December 31, 2008, CCS paid EO $969,831.96, with this figure including $9,927.69 in financing charges and $47,066.34 in late fees. (Defendant's Exhibit E). While most of CCS's payments to EO were late, it appears that the amount owed for 2007 was paid in full. (Defendant's Exhibit 6B, Affidavit of Mark Provenzano, ¶¶ 11 and 12).

In 2008, CCS was frequently tardy on its payments to Plaintiffs. During this time, CCS's owner, Defendant Provenzano, was in contact with Plaintiffs, regarding the late

payments and establishing payment plans. Defendant Provenzano occasionally issued his personal checks for the various invoices to Plaintiffs, which Plaintiffs held as security until CCS paid the outstanding amounts owed. (See Provenzano, Deposition Transcript, July 27, 2009, pp. 169-171).

By October 2008, CCS stopped paying Plaintiffs altogether. At that time, CCS was about six weeks behind in payments. Plaintiffs then stopped issuing payroll checks and performing Plaintiffs' other contractual duties due to CCS's failure to honor the Client Services Agreement. (See, Plaintiffs' Exhibit 6C, "Summary of Outstanding Amounts Due"). Plaintiffs' Summary of Outstanding Amounts Due shows a total of $172,461.00 owed to Plaintiffs by CCS for all amounts paid by Plaintiffs to cover employee wages and employee benefits.

CCS is now out of business and has no employees, except for Defendant Provenzano. (See Provenzano, Deposition Transcript, July 27, 2009, pp. 45, 57, 103, 192-193). All of the employees left after Plaintiffs stopped funding the payroll of CCS in October, 2008. (See Provenzano, Deposition Transcript, July 27, 2009, pp. 45, 249).

Plaintiff Employees Only filed suit in the Macomb County Circuit Court on December 26, 2008, against CCS and its only officer, Provenzano.

On December 8, 2009, pursuant to a Motion for Summary Disposition heard in the Macomb County Circuit Court, a Judgment in the amount of $155,301.50 was entered against CCS and Provenzano. The Michigan Court of Appeals later reversed that Judgment against Provenzano and remanded the matter to the Macomb County Circuit Court for a factual determination of Provenzano's personal liability. However, before the Macomb County Circuit Court could hold an evidentiary hearing, Defendant

Provenzano filed Chapter 7 Bankruptcy on January 24, 2012.

On June 5, 2012, Employees Only, Inc., Human Resources Structure, Inc., and Motor City Human Resources, Inc. ("Plaintiffs") filed a Complaint for Non-Dischargeability Pursuant to 11 U.S.C. §§ 523(a)(1), 523(a)(2), 523(a)(4), 523(a)(6), 523(a)(14) and 523(a)(14A).

On October 12, 2012, Plaintiffs filed a Motion for Summary Judgment under 11 U.S.C. §§ 523(a)(14) and 523(a)(14A), seeking the denial of discharge for withholding taxes deducted from employees' wages and paid by Plaintiffs to the Internal Revenue Service and the Michigan Department of Treasury in the amount of $34,052.32.

Defendant opposes Plaintiffs' Motion on three grounds. First, Defendant argues that CCS's breach of its contract with Plaintiffs (by failing to fund payroll and benefit obligations paid out by Plaintiff to CCS's employees) does not give rise to a non-dischargeable debt under 11 U.S.C. §§ 523(a)(14) and 523(a)(14A). Second, Defendant argues that 11 U.S.C. §§ 523(a)(14) and 523(a)(14A) do not apply because, under the Client Service Agreement, Plaintiffs were liable as co-employers and, therefore, were also responsible parties with respect to the tax payments. Third, after analysis of the payments made by CCS to Plaintiffs, Defendant argues that CCS has actually reimbursed Plaintiffs for the taxes paid, by way of finance charges and penalties.

## II.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(c); Fed. R. Bankr. P. 7056 (Rule 56 applies in adversary proceedings). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252. The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.

## III.

## JURISDICTION

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11. 28 U.S.C. §§1334 & 157. Core proceedings include proceedings to determine dischargeability.

*Id.* § 157(b)(2)(I). As this is a proceeding to determine dischargeability, this is a core proceeding under 28 U.S.C. § 157(b). Thus, this Court has jurisdiction over this matter.

IV.

ANALYSIS

Section 523(a)(14) excepts from discharge any debt "incurred to pay a tax to the United States that would be nondischargeable pursuant to [§ 523(a)](1)". Section 523(a)(14A) is, in essence, the same as § 523(a)(14), except that it applies to taxes owed to a governmental unit other than the United States.

Section 523(a)(14) was added to the Bankruptcy Code as part of the Bankruptcy Reform Act of 1994, Pub. L. 103-394. Section 523(a)(14A), which is the state tax counterpart of 523(a)(14), was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Pub. L. 109-8. These sections were enacted to prevent debtors from borrowing funds to pay an otherwise non-dischargeable tax debt and then seeking to discharge the debt incurred to make the payment. *In re Francis*, 226 B.R. 385, 396 (6th Cir. BAP 1998) (Lundin, J., dissenting); *see also In re Barton*, 321 B.R. 869, 875 (Bankr. N.D. Ohio 2004) ("This section was added to the Bankruptcy Code through the Bankruptcy Reform Act of 1994, and was intended 'to impose a limitation on pre-bankruptcy substitution of a dischargeable obligation for a nondischargeable obligation.' ") (quoting *American Express Centurion Bank v. Gavin (In re Gavin )*), 248 B.R. 464, 465 (Bankr. M.D. Fla. 2000)). The typical case for employing 11 U.S.C. § 523(a)(14) is when a debtor pays his taxes on his credit card or borrows money to pay those taxes, thus converting the non-dischargeable debt into a

dischargeable debt. *Van Dyn Hoven v. Bank of Kaukauna,* 470 B.R. 822, 825 (E.D. Wisc. 2012); *In re Stephenson*, 2007 WL 4268904, *2 (Bankr. E.D. Va. Nov. 30, 2007) (unpublished decision).

While there is not a great deal of case law on 11 U.S.C. §§ 523(a)(14) and 523(a)(14A), the case law which exists makes clear that 11 U.S.C. §§ 523(a)(14) and 523(a)(14A) will only apply when a debtor incurs debt for the specific purpose of paying off its outstanding tax obligation. *See, In re Cook*, 416 B.R. 284, 288 (Bankr. W.D. Va. 2009). An advance of credit for general business purposes does not create a non-dischargeable obligation to the party who advanced the credit. *Van Dyn Hoven,* 470 B.R. at 828.

To prevail on a claim under 11 U.S.C. §§ 523(a)(14) or 523(a)(14A), the creditor must show that: (1) the debt was incurred to pay a tax to the United States; and (2) the tax owed to the United States would have been nondischargeable under 11 U.S.C. §523(a)(1) if it had not been paid pre-petition. *In re Dinan*, 425 B.R. 583, 586 (Bankr. D. Nev. 2010); *In re Barton*, 321 B.R. at 879.

With respect to the first element required for non-dischargeability under 11 U.S.C. §§ 523(a)(14) and 523(a)(14A), the phrase "incurred to pay a tax" means that the debt was incurred "for the purpose of paying Federal or state taxes." *In re Stephenson*, 2007 WL 4268904, *2 (unpublished decision). Otherwise, the exceptions from discharge would become open invitations to trace the use of all funds loaned to a business, regardless of when, with a hope of tying them to payment of some sort of tax liability. *Van Dyn Hoven*, 470 B.R. at 828. Statutory exceptions to discharge are strictly construed against the party seeking the exception. *In re Berman*, 629 F.3d 761, 765

(7th Cir. 2011) ("Courts construe these exceptions narrowly, in favor of the debtor, bearing in mind the goal of bankruptcy law to give the debtor a fresh start."). The petitioning party has the burden of proving the right to the exception by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991); *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010) ("A bankruptcy court applies a preponderance of the evidence standard when making dischargeability determinations under 11 U.S.C. § 523(a).").

The issue before this Court is whether Defendant incurred his debt to Plaintiffs with the intention of converting a non-dischargeable tax obligation into a dischargeable debt. The *Van Dyn Hoven* case addressed a similar issue. In *Van Dyn Hoven*, *supra,* the debtor was the sole owner of a corporation which had a business checking account at the Bank of Kaukauna. The corporation paid its bills from this account, including its obligation to the IRS to remit the payroll taxes it had deducted from the pay checks of its employees. The bank had a policy of honoring the corporation's overdrafts, some of which included checks made payable to the IRS to satisfy the corporation's obligations to remit payroll taxes to the IRS. When the debtor filed for bankruptcy, the bank filed an action under 11 U.S.C. § 523(a)(14) seeking: (1) a determination that the overdrafts which covered the payments to the IRS were non-dischargeable as to the corporation; and (2) that the debtor could be held individually liable for the non-dischargeable debt of the corporation.

The bankruptcy court In *Van Dyn Hoven* held that the debt was non-dischargeable to the individual debtor, even though the taxes were paid by the corporation. On appeal, the district court reversed the bankruptcy court on the issue of

whether the overdrafts to the IRS, covered by the bank, were a non-dischargeable obligation under 11 U.S.C. § 523(a)(14). The court stated:

> I agree with *Cook* that the IRS need not make an assessment against the responsible official before the section 523(a)(14) exception to discharge of debt used to pay a business' payroll taxes is triggered. But more is required than was shown here. There must be a showing of a willful refusal to pay the withheld taxes on the part of the debtor. Otherwise, the debtor cannot be held personally liable in any capacity for the unpaid payroll taxes. . . . there is no evidence that Van Dyn Hoven knew that his payroll taxes were being paid with borrowed funds as opposed to the company earnings that were regularly deposited into the account. It was only after he filed for Chapter 7 that the Bank claimed he had incurred debt to pay undischargeable tax liability.
>
> For the same reason, there is also no evidence that Van Dyn Hoven incurred the debt for the purpose of paying taxes. . .

*Van Dyn Hoven*, 470 B.R. at 827, 828. The *Van Dyn Hoven* court concluded that, because the debtor had no knowledge of what checks were being paid out of the corporation's deposits into the account, and what checks were being covered by the bank as overdrafts, the corporation's debt to the bank was not "a debt incurred to pay a tax to the United States," that being the first element required for the finding of non-dischargeability under 11 U.S.C. § 523(a)(14).

In the instant case, CCS's debt to Plaintiffs was incurred pursuant to their Client Services Agreement, entered into in 2006. The purpose of the Client Services Agreement between CCS and Plaintiffs was to employ Plaintiffs to process CCS's payroll, which included computing wages and deductions for each CCS employee and issuing each employee a check for his net pay on the regularly scheduled payday. One of the deductions made by Plaintiffs was income tax owed by each employee. Plaintiffs would then issue checks to the taxing authorities to satisfy CCS's obligation to withhold

and pay the withheld taxes to the taxing authority. Plaintiffs also paid employee benefits such as health insurance, 401K deposits, and workers compensation insurance. The Client Services Agreement contemplated that Plaintiffs would be paid by CCS forty-eight hours prior to Plaintiffs' issuing CCS's workers their paychecks. Plaintiffs would then pay CCS's employees and CCS's other payroll obligations from its own bank account.

When CCS stopped prepaying Plaintiffs, Plaintiffs continued to issue checks to CCS's employees, make the appropriate deductions from their checks and pay the amounts deducted to the IRS and the State of Michigan. Until approximately October 2008, CCS always caught up on the late payments, paying the amount owed to cover payroll plus a late fee. In approximately October 2008, CCS stopped making any payments to Plaintiffs; Plaintiffs continued to fund CCS's payroll for approximately six weeks after the last payment by CCS. CCS incurred a debt to Plaintiffs, but the debt is for nonpayment of the total amount necessary to fund payroll, including all of the above-mentioned ancillary payments.

Plaintiffs argue that, because they used a portion of the contractual amounts paid to them to pay taxes owed by CCS's employees to the IRS, that portion is a non-dischargeable debt as between CCS's sole officer, Defendant Provenzano, and Plaintiffs.

The Court finds that Plaintiffs' argument fails for the same reason the bank's argument failed in the *Van Dyn Hoven* case. CCS was not incurring debt with the intent of taking money from Plaintiffs to satisfy its tax obligation. CCS and Defendant had no way of knowing whether Plaintiffs would continue to honor the contract at all; CCS did

not know for how long Plaintiffs would advance payroll for CCS's employees, deduct withholding taxes and pay CCS's insurance. Because Plaintiffs did cover CCS's payroll and other expenses for approximately six weeks, Plaintiffs did, in essence, loan CCS enough money to cover payroll for six weeks. But CCS's debt to Plaintiffs is for the entire payroll, not only for the taxes. The Court notes that Plaintiffs cannot segregate the wages it paid to CCS's employees from the payroll tax paid with money deducted from those employees' checks. Once CCS stopped paying Plaintiffs, Plaintiffs had two choices: (1) Plaintiffs could stop paying CCS's employees (in which case CCS would have had no debt to Plaintiffs and no payroll obligation to the IRS because the payroll tax obligation only arises if the employees are paid); or (2) Plaintiffs could continue to honor the contract by paying CCS's employees, deducting taxes from the employees' wages and paying those taxes over to the IRS (in which case CCS had a debt to Plaintiffs for the payroll covered by Plaintiffs).

In sum, if Plaintiffs had not advanced payroll to pay CCS's employees, the employees would have quit six weeks earlier than they did. If the employees had quit, CCS would not have had any liability to pay taxes to the IRS because that liability only arises if an employer withholds taxes from his employees' paychecks and fails to remit the withheld taxes to the IRS. Instead, in this case, CCS incurred a debt to Plaintiffs because Plaintiffs honored its Client Services Agreement with CCS and continued to pay CCS employees for an additional six weeks after CCS stopped paying Plaintiffs. This Court concludes that CCS did not incur its debt to Plaintiffs for the purposes of paying off a nonexistent debt to the IRS. Therefore, Plaintiff cannot establish the first element of a cause of action under 11 U.S.C. §§ 523(a)(14) and 523(a)(14A).

The second element for a finding of non-dischargeability under 11 U.S.C. §§523(a)(14) and 523(a)(14A), requires Plaintiffs to show that the tax owed to the IRS would have been non-dischargeable under 11 U.S.C. § 523(a)(1), if it had not been paid pre-petition. *See, Dinan*, 425 B.R. 583; *Van Dyn Hoven,* 470 B.R. 822. Section 523(a)(1) states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> (1) for a tax or a customs duty--
>
> (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

The taxes at issue in this case are payroll withholding taxes. Payroll taxes are a tax the employer is required to withhold from the paychecks of its employees and pay over to the taxing authorities. The taxes fell within the ambit of 11 U.S.C. § 507(a)(8). The employers' statutory obligation is to withhold the taxes and pay the withheld taxes to the taxing authority. The employer only incurs a liability to the taxing authority if the employer withholds the taxes but then fails to remit the withheld taxes to the taxing authorities. If an employer withholds taxes and fails to remit them to the taxing authorities, the amount of the liability would be a non-dischargeable liability under 11 U.S.C. § 523(a)(1).

The problem for Plaintiffs in this case is that CCS and Defendant never withheld taxes or failed to remit taxes to the taxing authorities and, therefore, CCS incurred no liability. CCS had contracted with Plaintiffs to perform the duty of withholding taxes and paying the withheld taxes to the IRS. Plaintiffs performed these duties, and the taxing

authorities were paid. Because CCS never retained taxes withheld from the checks of CCS's employees, CCS never had a non-dischargeable tax liability to the IRS. For this reason, Plaintiffs have failed to establish the second element of a claim under 11 U.S.C. §§ 523(a)(14) and 523(a)(14A).

Because this Court has concluded that CCS does not have a non-dischargeable obligation to Plaintiffs, this Court need not reach the question of whether Defendant could be held personally liable for a non-dischargeable debt of a corporation for which he is the sole shareholder. However, because the parties spent considerable effort briefing this issue, the court will briefly discuss whether Defendant could have been held personally liable had CCS been found liable to Plaintiff under 11 U.S.C. §523(a)(14). In his brief, Defendant relied heavily on *In re White*, 455 B.R. 141 (Bankr. N.D. Ind. 2011) to argue that because he had not been personally assessed by a taxing authority as the liable corporate officer, Defendant could not be held liable to Plaintiff. This Court disagrees with the *White* case in this respect, and finds the reasoning of the *Van Dyn Hoven* and *Cook* cases far more persuasive. If a corporation has an outstanding tax liability, borrows money to pay off that liability, and immediately files for bankruptcy and if the corporation is owned by one person, there is no logical reason to impose a barrier to a party bringing a non-dischargeability action against both the corporation and the individual. If CCS had been liable to the IRS for the nonpayment of withholding taxes, borrowed money from Plaintiff to pay that specific obligation, and immediately filed for bankruptcy, Plaintiff could have sought a determination of non-dischargeability against both CCS and Defendant. However, as fully explained above, those are not the facts of this case.

This Court need not reach Defendant's second and third arguments, having found Defendant's debt is dischargeable under 11 U.S.C. §§ 523(a)(14) and 523(a)(14A).

V.

CONCLUSION

For the reasons set forth above, this Court finds that 11 U.S.C. §§ 523(a)(14) and 523(a)(14A) do not apply to the facts of this case. Plaintiffs' Motion for Summary Judgment is DENIED and this Court GRANTS summary judgment to Defendant as to Count IV of its Complaint. Counts of the Complaint pertaining to 11 U.S.C. §§523(a)(2), (4) and (6) remain for trial.

Signed on November 26, 2012

/s/ Marci B. McIvor

Marci B. McIvor
United States Bankruptcy Judge